Geoffrey T. Raicht
Maja Zerjal
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Petitioners*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| B. Endeavour Shipping Company Limited, | Case No. 15-_____ (___) |
| Debtor in a Foreign Proceeding. | |

**VERIFIED PETITION FOR ENTRY OF**
**AN ORDER RECOGNIZING FOREIGN MAIN**
**PROCEEDING AND GRANTING ADDITIONAL RELIEF**

Peter Kubik and Andrew Andronikou of UHY Hacker Young LLP, as the duly authorized Joint Administrators (the "Petitioners") of the above-captioned debtor (the "Debtor"), which is the subject of an administration proceeding pending before the High Court of Justice of England and Wales (the "Foreign Court") and assigned case no. 465/2015 (the "UK Proceeding"), respectfully file an Official Form Petition and this Verified Petition (together, the "Petition") for entry of an order recognizing the UK Proceeding as a foreign main proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code") and granting certain additional relief pursuant to Bankruptcy Code section 1521.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this district pursuant to 28 U.S.C. § 1410.[1]

## BACKGROUND

### I.      The Debtor's Business

2.      The Debtor is a company incorporated in Cyprus whose sole asset is a 62,000 deadweight tonnage ("DWT") Panamax Tanker named "Ice Base," valued at approximately $28.125 million.  Ice Base transports liquid natural gas and oil and operates principally in the territorial waters of the United States, including New York harbor.  Ice Base is currently docked in Big Stone Anchorage in the Delaware Bay, and is expected to depart on or about February 3, 2015.

3.      The Debtor has no employees.  Marine Cross Services Limited ("Marine Cross"), a London-based shipping agent, handles the Debtor's day-to-day financial administration and management pursuant to a Management Services Contract with NSBI (defined below), dated March 9, 2006.  Certain commercial, technical and operational management is outsourced to a group of companies called Scorpio.

4.      The Debtor is a wholly-owned subsidiary of Baltic Tankers Holding Ltd., a Cyprus company ("Holdings"), which in turn is a wholly-owned subsidiary of Northsea Base Investments Ltd., a Cyprus company ("NSBI"), which in turn is a wholly-owned subsidiary of Hamilton Corporation, a Nevis corporation, which in turn is wholly-owned by three trusts

---

[1] As of the date hereof, the Debtor has an interest in an undrawn retainer held by Proskauer Rose LLP, Petitioners' United States counsel.  Prior to filing the Petition, the Petitioners deposited $5,000 in a non-interest bearing account (the "Account") with Citibank in New York, New York.  Such funds remain in the Account as of the date hereof and are the Debtor's property.  Proskauer is only permitted to apply the funds in the Account to outstanding invoiced amounts at the Petitioners' direction.

organized under Nevis law: The K Family Trust, The Diamond Trust, and The Hermes Trust (together, the "Trusts"). The Trusts' respective settlors, Serge Kisselev, Dmitri Drytchenko, and Anatoly Lugovkin, are all Marine Cross directors. In addition, Messrs. Kisselev and Lugovkin reside in London and are actively involved in running Marine Cross.

5.    In addition to holding all equity interests in the Debtor, Holdings holds all equity interests in five other Cyprus companies (the "Sister Companies," which together with Debtor, Holdings, and NSBI are hereinafter referred to as the "Group"), each of which owns a 37,000 DWT product carrier that operates principally in the waters of Europe and the Baltic area. The Sister Companies are B. Force Shipping Company Limited, B. Faith Shipping Company Limited., B. Marshall Shipping Company Limited, B. Ambition Shipping Company Limited, and B. Merchant Shipping Company Limited. Collectively, the Sister Companies own two Ice Class 1A vessels with an estimated market value of approximately $18.25 million each and three Ice Class 1B vessels with an estimated market value of approximately $17.875 million each (as of June 2014).

6.    As described below, on January 15, 2015, the Group was placed into administration in London, England.

## II.    The Group's Capital Structure/Events Leading to Administration

7.    Although the Group is operationally solvent, it is highly levered.

8.    Pursuant to a Loan Agreement, originally dated December 12, 2007, among the Sister Companies, as borrowers, the Debtor, as collateral owner, Holdings and NSBI, as guarantors, certain lenders, and BNP Paribas S.A. ("BNP"), as agent, collateral trustee, and swap bank, the Sister Companies were extended a $174.5 million secured term loan. Pursuant to another Loan Agreement, originally dated January 22, 2008, among the Debtor and dormant company P. Merchant Shipping Company Limited, as borrowers, the Sister Companies, as

collateral owners, Holdings and NSBI, as guarantors, certain lenders, and BNP, as agent, collateral trustee, and swap bank, the Debtor was extended a $105 million secured term loan. Both Loan Agreements are governed by English law.  On December 22, 2014, BNP issued default notices to the Group for failure to pay the final installment of $141.725 million due December 19, 2014 under the Loan Agreement, originally dated December 12, 2007, copies of which are attached as Exhibit A to the Declaration of Peter Kubik (the "Kubik Declaration"). BNP has not accelerated the outstanding balance due under the Loan Agreements or otherwise exercised remedies against the Group, but has reserved the right to do so.

9.      In addition, NSBI issued two Performance Guarantees, dated September 29, 2008 and October 3, 2008, respectively, to Hyundai Mipo Dockyard Co. Ltd. ("Hyundai"), pursuant to which NSBI guaranteed the payment obligations of NSBI affiliates and Cyprus companies Baltic Serenity Shipping Co. Ltd. and Baltic Solar Shipping Co. Ltd. to Hyundai under an English law-governed shipbuilding contract, originally dated April 11, 2007 (as amended, the "Shipbuilding Contract"), concerning the construction of two additional 37,000 DWT product carriers (named the "Baltic Serenity" and the "Baltic Solar," respectively).  On November 17, 2014, Hyundai sent NSBI an invoice for $2,754,583, due November 30, 2014, in respect of amounts alleged to be owed under the Shipbuilding Contract in connection with Baltic Serenity's construction.  In addition, the Petitioners believe Hyundai plans on asserting a claim against NSBI for similar amounts in connection with Baltic Solar's construction.  NSBI did not pay the $2,754,583 invoice by November 30, 2014, as it has not admitted to owing such amount.

III.    **The Administration**

10.     In light of the outstanding defaults under the Loan Agreements with BNP and uncertainty with regard to actions threatened by Hyundai, NSBI's directors appointed administrators over NSBI on January 15, 2015, and the remainder of the Group was placed into

administration by shareholders' resolution on the same day. Documents evidencing the commencement of the UK Proceeding and the Petitioners' appointment as the Debtor's joint administrators are attached as Exhibit B to the Kubik Declaration.

11.     Under English law, pursuant to the Insolvency Act 1986, an administrator may be appointed for the purpose of rescuing a company as a going concern, achieving a better result for the company's creditors as a whole than would be likely if the company were wound up without first being in administration, or realizing property in order to make a distribution to one or more secured or preferred creditors. *See* Schedule B1 to the Insolvency Act 1986 at ¶3(1) (setting forth administration proceeding's objectives) (available at http://www.legislation.gov.uk).

12.     While debtors are the subject of an administration proceeding, they are managed by one or more administrators, and debtors' directors are, in nearly all respects, restricted from exercising their powers.[2] As court officers, administrators are subject to control and supervision by the Foreign Court. *Id*. at ¶5. During an administration proceeding's pendency, a moratorium akin to the Bankruptcy Code's automatic stay remains in effect.[3]

13.     On January 21, 2015, the Petitioners applied to the Foreign Court for a declaration that the Debtor's center of main interests ("COMI") is England and Wales. In the absence of any responses to the application, the Petitioners' counsel, Felicity Toube QC, presented both the factors pointing towards and the factors pointing against the Debtor's COMI being in England and Wales. Justice Birss found that the Debtor's COMI is located in England and Wales and

---

[2] Debtors' directors cannot exercise any management power that could interfere with the exercise of the administrator's powers without prior consent from the administrator. *See* Schedule B1 to the Insolvency Act 1986 at ¶64.

[3] While the administration will be recognized by the other member states of the European Union pursuant to the EC Regulation on Insolvency Proceedings 2000 ("EC Insolvency Regulation"), Article 5 of the EC Insolvency Regulation states that the rights *in rem* of creditors and third parties in respect of certain assets, including moveable, tangible property, located in the territory of another member state at the time that insolvency proceedings are commenced, will not be affected. Accordingly, the English moratorium will not apply to ships located in other member states of the European Union.

issued an order and a decision to that effect.  A copy of both is attached as Exhibit C to the

Kubik Declaration.

**RELIEF REQUESTED**

14.     The Petitioners believe it is possible that parties may attempt to seize Group

assets located outside England and Wales.  The Petitioners have elected not to seek provisional

relief at this time because they are not aware of any imminent threat to the Debtor's assets.

However, should circumstances change or the Petitioners become aware of additional facts, the

Petitioners reserve the right to seek the Court's assistance to protect the Debtor's assets,

including pursuant to Bankruptcy Code section 1519.  Accordingly, the Petitioners respectfully

request entry of an order, substantially in the form attached hereto as Exhibit A, granting the

following relief:

(a)     recognizing the UK Proceeding, pursuant to Bankruptcy Code section
1517, as a foreign main proceeding, as such term is defined in Bankruptcy
Code section 1502(4);[4]

(b)     granting relief automatically and as of right upon recognition of the UK
Proceeding as a foreign main proceeding pursuant to section 1520(a);

(c)     granting certain additional relief pursuant to section 1521, including an
injunction prohibiting all persons and entities, other than Petitioners and
their representatives and agents, from:

i.   execution against any of the Debtor's assets;

ii.  the commencement or continuation, including the issuance or
employment of process, of a judicial, administrative, arbitral, or
other action or proceeding, or to recover a claim, which in either
case is in any way related to, or would interfere with, the
administration of the Debtor's estate in the UK Proceeding;

---

[4] Although the Petitioners are confident that the UK Proceeding is a foreign main proceeding within the definition of
Bankruptcy Code section 1502(4), in an abundance of caution, the Petitioners reserve the right to argue, in the
alternative, that the UK Proceeding is a foreign nonmain proceeding within the definition of Bankruptcy Code
section 1502(5) and to seek appropriate relief under Bankruptcy Code section 1521 and any other applicable
provision of the Bankruptcy Code.

iii. taking or continuing any act to create, perfect or enforce a lien or other security interest, set-off or other claim against the Debtor or any of its property;

iv. transferring, relinquishing or disposing of any property of the Debtor to any person or entity other than the Petitioners;

v. commencing or continuing an individual action or proceeding concerning the Debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a); and

vi. declaring or considering the filing of the UK Proceeding or this chapter 15 case a default or event of default under any agreement, contract or arrangement;

(d)    otherwise granting comity to and giving full force and effect to the UK Proceeding; and

(e)    awarding the Petitioners such other relief as this Court may deem just and proper.

## BASIS FOR RELIEF

### I.    The Petitioners Satisfy All Requirements for Recognition under Section 1517(a)

15.    Section 1517(a) provides "an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515."    Each of the foregoing requirements has been satisfied, as described below.

### A.    The UK Proceeding is a Foreign Main Proceeding

16.    Under Bankruptcy Code section 1502(4), the term "foreign main proceeding" means "a foreign proceeding pending in the country where the debtor has the center of its main interests."

A.      The UK Proceeding Satisfies the Requirements of Section 101(23)

17.      Bankruptcy Code section 101(23) defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."

18.      There can be little doubt the UK Proceeding satisfies the requirements of section 101(23): the Insolvency Act 1986 is a statute relating to insolvency and debt adjustment; administrative proceedings thereunder are collective judicial proceedings in which a debtor's assets and affairs are managed by administrators, subject to court control; and the statute makes clear the administration proceeding's purpose is to effect a reorganization or liquidation.

19.      In addition, many courts in this and other districts have held administration proceedings under the laws of England and Wales satisfy section 101(23)'s requirements. *See In re Britannia Bulk Holdings Inc.*, No. 09-13724 (Bankr. S.D.N.Y. July 23, 2009) [ECF No. 13] (order recognizing foreign main proceeding and granting additional relief pursuant to section 1521); *In re Nortel Networks UK Limited*, No. 09-11972 (Bankr. D. Del. June 26, 2009) [ECF No. 36] (same); *In re Pro-Fit Holdings Ltd.*, No. 08-17043 (Bankr. C.D. Cal. Aug. 27, 2008) [ECF No. 17] (same); *In re ING Re (U.K.) Ltd.*, No. 08-10018 (Bankr. S.D.N.Y. Jan. 30, 2008) [ECF No. 15] (same).

B.      The Debtor's Center of Main Interests is England and Wales

20.      Bankruptcy Code section 1516(c) provides "absen[t] evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests," but does not define "center of . . . main interests."

21.    Courts have held the term "generally equates with the concept of 'principal place of business' in the United States." *In re Millenium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 72 (Bankr. S.D.N.Y. 2011) (quoting *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (E.D. Cal. 2006)); *see also In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 48 (Bankr. S.D.N.Y. 2008) (using COMI and "principal place of business" interchangeably).

22.    In undertaking a COMI analysis, courts may consider "any relevant activities, including liquidation activities and administrative functions . . . the location of the debtor's headquarters; the location of those who actually manage the debtor . . . the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (citing *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013)).

23.    The Debtor's COMI is London, England, notwithstanding the Debtor's incorporation in Cyprus because: the UK Proceeding is pending in London, where the Petitioners exclusively administer the Debtor's business and assets; the Debtor's operations are managed by Marine Cross from London; two of the Trusts' three settlors reside in London; and the Loan Agreements are governed by English law.  The Debtor has no assets or personnel in Cyprus.  In addition, the Foreign Court declared that the Debtor's COMI is in England and Wales, as noted above.

### B.    Petitioners are Persons

24.    The Petitioners are individuals and, thus, "persons" under Bankruptcy Code section 101(41).

**C.** **Petition Meets the Requirements of Bankruptcy Code Section 1515**

25.     The Petitioners have satisfied all procedural requirements set forth in Bankruptcy Code section 1515.  In accordance with Bankruptcy Code section 1515(b), Exhibit B to the Kubik Declaration is a certified copy of the Notice of Appointment of an Administrator by Company or Director(s) with regard to the Debtor, which other courts have held satisfy such section's requirements.  *See, e.g., In re Pro-Fit*, 391 B.R. 850, 858 (Bankr. C.D. Cal. 2008) (finding notice of administrator's appointment sufficient to satisfy requirements of section 1515(b)).  In accordance with section 1515(c), which requires that a foreign representative identify all known foreign proceedings pending with respect to a debtor, the Kubik Declaration includes a statement that the UK Proceeding is the only foreign proceeding with respect to the Debtor known to the Petitioners.  In addition, the Kubik Declaration includes all information required by Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## CONCLUSION

WHEREFORE, the Petitioners respectfully request that this Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: February 3, 2015
      New York, New York

Respectfully submitted,

/s/ Geoffrey T. Raicht
Geoffrey T. Raicht
Maja Zerjal
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
Fax: (212) 969-29000

*Attorneys for the Petitioners*