# **EXHIBIT C**

## **Center of Main Interests Order**

IN THE HIGH COURT OF JUSTICE    NO. 467/2015
CHANCERY DIVISION
COMPANIES COURT

BEFORE MR JUSTICE BIRSS
21 JANUARY 2015

IN THE MATTER OF B. AMBITION SHIPPING COMPANY LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

---

### ~~DRAF~~T ORDER

---

**UPON THE APPLICATION** of Andrew Andronikou and Peter Kubik, both of UHY Hacker Young, Quadrant House, 4 Thomas More Square London E1W 1YW, in their capacity as joint administrators (the "Joint Administrators") of B. Ambition Shipping Company Limited (in administration) (the "Company") presented to this Court on 21 January 2015

**AND UPON READING** the first witness statement of Andrew Andronikou dated 20 January 2015

**AND UPON READING** the first witness statement of Nigel Derek James Blincow dated 20 January 2015

**AND UPON HEARING** counsel for the Joint Administrators

**IT IS DECLARED THAT**

1. The centre of main interests in the Company is in England and Wales.

**IT IS ORDERED THAT**

2. The costs of and incidental to this application be payable as an expense of the administration of the Company.

NO. 467/2015

IN THE HIGH COURT OF JUSTICE
CHANCERY DIVISION
COMPANIES COURT

IN THE MATTER OF B. AMBITION SHIPPING COMPANY LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

---

~~DRAFT~~ ORDER

---

Solicitors for the Joint Administrators
Proskaur Rose (UK) LLP
10 Bishops Square
London
E1 6EG
Tel: 020 7539 0600
Ref: Crispin Daly



Neutral Citation Number: [2015] EWHC 121 (Ch)

Case Nos: 462, 464, 465, 467, 468, 470, 471 and 472 of 2015

IN THE HIGH COURT OF JUSTICE
CHANCERY DIVISION
COMPANIES COURT

Rolls Building
Royal Courts of Justice
Fetter Lane, London, EC4A 1NL

Date: 26/01/2015

Before :

MR JUSTICE BIRSS

- - - - - - - - - - - - - - - - - - - - -

Between :

NORTHSEA BASE INVESTMENT LIMITED
BALTIC TANKERS HOLDING LIMITED
B. ENDEAVOUR SHIPPING CO LIMITED
B. FORCE SHIPPING CO LIMITED
B. FAITH SHIPPING CO LIMITED
B. MARSHALL SHIPPING CO LIMITED
B. AMBITION SHIPPING CO LIMITED
B. MERCHANT SHIPPING CO LIMITED
AND
IN THE MATTER OF THE INSOLVENCY ACT 1986

- - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - -

Ms Felicity Toube QC (instructed by Proskauer Rose (UK) LLP) for the Applicants

Hearing dates: 22nd January 2015
- - - - - - - - - - - - - - - - - - - - -

## Approved Judgment

I direct that pursuant to CPR PD 39A para 6.1 no official shorthand note shall be taken of this Judgment and that copies of this version as handed down may be treated as authentic.

............................

MR. JUSTICE BIRSS

**Mr Justice Birss:**

1. This is an application on behalf of the administrators for each of the companies named in the heading of this judgment. The administrators were appointed on the 15 January 2015 in an out of court procedure. The application seeks a declaration relating to the centre of main interests ("COMI") for each of the companies. The declaration is sought under paragraph 68(2) of Schedule B1 of the Insolvency Act 1986.

2. The purpose of declaring this COMI is in order to assist in the "exporting" of the administration to other jurisdictions. The matter is urgent because the companies are operating vessels that are in international waters and it is likely that applications in other jurisdictions may be needed in the near future. The application is for a declaration in relation to each company that the COMI is England and Wales within the meaning of the EC Regulation on Insolvency Proceedings 2000.

### The Companies

3. The third to eighth applicant companies (the "Ship Companies") can each be described as special purpose vehicles. Each company owns a single ship in the fleet. These six Ship Companies are themselves all 100% owned by the second applicant, Baltic Tankers Holding Limited, which in turn is itself 100% owned by the first applicant, Northsea Base Investment Limited ("NSBI").

4. The sole shareholder of NSBI is Hamilton Corporation, incorporated in Nevis. The corporation is owned in broadly equal shares by three Nevis family trusts, each family trust is settled by different individuals. The three individuals being Mr Serge Kisselev, Mr Dmitri Dyrtchenko and Mr Anatoly Lugovkin. The trustee of the three trusts and effective shareholder of NSBI is Mr Ian Pinniger who conducts business through Nevis, but is physically resident in Jersey for part of the time during the year.

5. All three of the settlors of these trusts are directors of Marine Cross Services Limited. Although one of them, Mr Dyrtchenko, is no longer an active participant in Marine Cross and resides in Switzerland, the other two are actively involved in running Marine Cross and are normally domiciled in London although currently registered as Non-Domiciles for income tax purposes.

6. Marine Cross is a shipping agent incorporated in the UK with its registered offices in London. The companies are the only client of Marine Cross. All eight of the applicant companies are incorporated in Cyprus, share the same company registered office in Cyprus and have essentially the same form of Cypriot corporate documents.

### The Regulations

7. Recital 13 of the Regulation states as follows:

> "The "centre of main interests" should correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties."

8. Article 3 of the Regulation states:

> "International jurisdiction

> 1. The courts of the Member State within the territory of which the centre of a debtor's main interest is situated shall have jurisdiction to open insolvency proceedings. In the case of a company or legal person, the place of the registered office shall be presumed to be the centre of main interests in the absence of proof to the contrary.
>
> …"

9. Thus the law presumes that the COMI is the member state in which the registered office is situated but that presumption may be rebutted by evidence.

10. In the case C-341/04 *In re Eurofood IFSC Limited* the CJEU considered the location of the centre of a debtor's main interests. An important element of the court's judgment was to emphasise that the concept of the centre of main interests has an autonomous meaning under Community law.

11. The fourth question before the CJEU related to the factors determining the centre of main interest particularly in the case of a parent company and subsidiaries. Paragraphs 26 to 37 of the judgment of the Court dealt with the fourth question. The court emphasised the importance of considering each debtor, that is to say each member of a group of companies, as a distinct legal entity subject to its own court jurisdiction and also emphasised the importance of considering the centre of main interests as being something identified by reference to criteria that are both objective and ascertainable by third parties. Paragraph 34 of the judgment provides:

> "It follows that, in determining the centre of main interests of a debtor company, the simple presumption laid down by the community legislature in favour of the registered office of that company can be rebutted only if factors which are both objective and ascertainable by third parties enable it to be established that an actual situation exists which is different from that which locating it at the registered office is deemed to reflect."

12. The CJEU returned to consider the COMI of a debtor in *Interedil SRL v Fallimento Interedil SRL* case C-396/09 in 2011. This judgment followed the earlier decision in *Eurofood* and again emphasised the importance of objective factors ascertainable by third parties. Paragraph 53 of the judgement explained that the presence of company assets and the existence of contracts for the financial exploitation of those assets in the Member State other than that in which the registered office is situated cannot be regarded as sufficient factors to rebut the presumption laid down by the EU legislature. To rebut the presumption requires a comprehensive assessment of all the relevant factors. The task is to establish, in a manner that is ascertainable by third parties, that the company's actual centre of management and supervision and the management of its interests is located in the relevant Member State.

## Assessment

13. The applicant relies on two witness statements, one of Mr Blincow and another of Mr Andronikou. Mr Blincow is a director of Marine Cross and focussed on the factual

          matters relating to COMI. Mr Andronikou is one of the joint administrators (with Mr Peter Kubik).

14. The purpose of Mr Andronikou's evidence is to explain why the administrators were appointed in an out of court procedure (under paragraph 22 of Schedule B1 of the 1986 Act) rather than pursuant to an application to the court under paragraph 12 of Schedule B1. He explains that by 19 December 2014 the holding company NSBI was heavily indebted, had already defaulted on its loans and received two notices of default from its lenders (a syndicate of banks, led by BNP Paribas). The outstanding interest payments were being rolled forward. NSBI also faced litigation from Hyundai, in relation to a debt claimed by them of over $5M. Due to cross-collaterisation, the group as a whole was therefore insolvent. Mr Andronikou explained that in 13th January 2015 the directors of NSBI resigned and were replaced with new directors. These new directors and the proposed joint administrators believed that it was in the best interests of NSBI, the other group companies and the creditors and shareholders if NSBI was placed into administration. Particular urgency arose from the fact that a ship was moving imminently into waters in and around the USA.

15. I am satisfied from Mr Andronikou's evidence that the matter was sufficiently urgent to justify the out of court appointment, followed as it was by this urgent application to the court for a declaration relating to the COMI.

*Consideration of COMI*

16. As is clear from the *Eurofood* judgment, each company in a group needs to be considered separately. In this case it is convenient to deal with the Ship Companies since they are all in the same position and then consider the other two companies.

17. Mr Blincow's evidence explains that the operations and management of each of the Ship Companies were devolved to Marine Cross. The framework for this devolution is a service agreement dated 9 March 2006. Nevertheless it is clear that more services, operations and management are undertaken by Marine Cross for and on behalf of the Ship Companies than is stated in the service agreement.

18. Marine Cross contracts the commercial operational and technical management of each of the companies to the Scorpio Group. Scorpio's work is divided between India and the UK. The operations by Scorpio are carried out in India while the commercial management is carried out in the UK.

19. Mr Blincow's evidence explains and demonstrates that despite the involvement of Scorpio, all payments demanded in respect of trade creditors for the Ship Companies go through and are paid by Marine Cross as agents for the relevant Ship Company. This is so even though the payments are made from a bank account in Switzerland. Exhibits to Mr Blincow's evidence illustrate that the agents direct payments to be made in England.

20. The evidence also established that charterparties are dealt with both through Scorpio UK and Marine Cross in the UK although the actual charter is drawn up by Scorpio India. There is also clear evidence that in many cases external queries which were raised with Scorpio India were answered by Marine Cross from London and enquiries

from third parties in relation to the Ship Companies were addressed ultimately to London.

21. In other words, from the point of view of objective evidence and what could be ascertained by third parties, the involvement of Marine Cross in London is critical to the operation of the Ship Companies.

22. The main types of trade creditors for the Ship Companies are those relating to port expenses, bunkering (i.e. fuel), tugs and pilotage, and broker's commissions. The administrators do not currently have information in relation to pilotage and broker's commissions.

23. In relation to port expenses, although invoices are raised by the creditors to Scorpio India they are passed to Marine Cross for payment and queries are made to Marine Cross in England. As counsel submitted, invoices from Scorpio in relation to port expenses appear to pass straight through. I accept that a third party would assume that payments are being made by the Ship Companies albeit they are dealt with by Scorpio and payments directed by Marine Cross.

24. In respect of bunkering it is clear that Marine Cross deals with creditors directly. Third parties dealing with the Ship Companies in that case would be dealing with them via Marine Cross in England.

25. I turn now to consider the point of view of banks, who are the largest creditors of the companies. These factors apply not just to the Ship Companies but to all the companies in the group. By far the largest creditors are the syndicate of lenders led by BNP Paribas under two loan facilities which are secured by share pledges over the Ship Companies, guaranteed by both NSBI and Baltic Tankers. The facilities are governed by English law and contain exclusive English jurisdiction clauses. The interest payments to BNP Paribas are always arranged by Marine Cross from the companies' bank accounts. Thus the banks would have dealt with Marine Cross in London in relation to receipt of payments. The two loan agreements also state that Marine Cross is the contact address in respect of the notices to be sent under the facilities and Marine Cross was irrevocably appointed by the Ship Companies as agent for service of process in relation to proceedings under the loan agreements. The individuals with whom the bank dealt mainly in relation to the facilities were Mr Blincow and Mr Kisselev. Both individuals are based in London although I note that at a final meeting on 16 December 2014, Mr Blincow did not attend and the only attendances were by the settlors.

26. A factor which is neutral for COMI purposes is the consideration of the freight invoices. They are made out to Scorpio as agent for the relevant Ship Company with the company's addresses in Cyprus, the covering emails from Scorpio include Marine Cross and its directors on the distribution list. It therefore follows that a third party dealing with each of the ship companies might assume they were dealing with companies in Cyprus or with Scorpio in India or with Marine Cross in London. Neither NSBI nor Baltic Tankers has any operational function as such and so the only relevant COMI factors in relation to each of these companies (that is to say NSBI and Baltic Tankers) are those relating to the bank creditors.

27. It is clear that there are a number of factors of this case pointing away from England and Wales as the COMI. First, and obviously, the companies are all incorporated in Cyprus with registered offices in Cyprus and therefore the presumption is that the COMI of each of them is in Cyprus. It is also notable that none of the directors are based in England and that the board meetings were not held in England. However, as Counsel submitted, from the point of view of facts ascertainable by a third party, there is no reason why a third party would have any knowledge of the location where directors meetings were held, nor, on the unusual facts of this case, would they regard the directors as being individuals of great significance. Up to 13th January 2015 the directors of all the companies were Mr Pinniger and two Cypriot nominee directors. In reality Mr Pinniger was the only active director. He acted from either Nevis or Jersey but his actions were performed under the direction of the settlors, two of whom are based in London and all of whom are closely linked to Marine Cross.

*Conclusion*

28. Considering the matter overall, there are a number of jurisdictions with which the operation of these companies is linked. This is unsurprising given the international nature of their business. The legislation makes it clear that the presumption is that the COMI of the company will be the State of its registered office which, in this case, is Cyprus. The burden is on the applicant to establish a different COMI and that will involve a comprehensive review of all the facts with a particular focus on objective matters and matters ascertainable by third parties.

29. In this case it is clear that the only realistic possible states which represent the COMI for the Ship Companies are Cyprus or England. Although other states are involved in the operation of these companies the only conceivable candidate state apart from Cyprus or England could be India, given the involvement of Scorpio India. However in my judgment no third party would seriously think the centre of administration of any of these companies was in India. As between the two states, Mr Blincow's evidence establishes sufficient evidence relating to the administration of the Ship Companies to rebut the presumption in favour of Cyprus and establish that the COMI of the Ship Companies is England and Wales.

30. The position of NSBI and Baltic Tankers is less clear cut given that these companies carry out many fewer operational tasks than the Ship Companies. There are not the same links between Marine Cross in London and third parties trading with NSBI or Baltic Tankers on which the applicants can rely as compared to the position of the Ship Companies. I accept counsel's submission that since neither NSBI nor Baltic Tankers have any operational function as such, the only relevant COMI factors relating to those companies are those relating to the banks. Looked at in that way, in my judgment the presumption is rebutted on the evidence of Mr Blincow. The COMI of NSBI and Baltic Tankers is also England and Wales.

31. For these reasons I will grant the declarations sought by the applicants in this case.